IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RONALD SAMLAND, Plaintiff, v. TURNER ENTERPRISES, INC., a Delaware corporation, and TERRY PURDUM, an individual, Defendants. | ) | 4:12CV3080 MEMORANDUM AND ORDER ON THE DEFENDANTS' OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS, RECOMMENDATION, AND ORDER |

On March 16, 2012, Plaintiff Ronald Samland filed a complaint against Defendants Turner Enterprises, Inc. and Terry Purdum in the District Court of Cherry County, Nebraska. (Notice of Removal, Ex. A, Compl., ECF No. 1.) On April 20, 2012, the defendants removed the action to this court, (see generally Notice of Removal, ECF No. 1), and filed a motion to dismiss Purdum from the case pursuant to Federal Rule of Civil Procedure 12(b)(6), (see Defs.' Mot. to Dismiss, ECF No. 6). Thereafter, Samland filed a "Motion to Remand and Motion for Reasonable Attorney's Fees," (see ECF No. 9), a "Cross-Motion to Stay Consideration of Defendants' Motion to Dismiss and Motion to Enlarge Time," (see ECF No. 12), and a "Motion for Setting Place of Trial and Demand for Jury Trial," (see ECF No. 15). On June 18, 2012, United States Magistrate Judge Cheryl R. Zwart recommended that the parties' motions be resolved as follows: Samland's motion to stay should be granted; Samland's motion to remand should be granted; Samland's motion for attorney's fees should be denied; and the defendants' motion to dismiss should be denied as moot. (See generally Findings, Recommendation, & Order, ECF No. 22.) The magistrate judge also denied as moot Samland's motion to change the place of trial. (See id. at 12.)

The defendants have objected to the magistrate judge's recommendations that I grant Samland's motion to remand and deny the defendants' motion to dismiss. (See Defs.' Objections, ECF No. 23.) See also Fed. R. Civ. P. 72(b)(2). I have conducted a de novo review of the portions of the magistrate judge's recommendations that are subject to defendants' objections, see 28 U.S.C.

§ 636(b)(1), Fed. R. Civ. P. 72(b)(3), and I find that the defendants' objections must be overruled. The magistrate judge's Findings, Recommendation, and Order will be adopted with one modification.

## I. BACKGROUND

The complaint alleges as follows. Samland is a resident of Cherry County, Nebraska. (Notice of Removal, Ex. A, Compl. ¶ 1, ECF No. 1.) Turner Enterprises is a Delaware corporation, and it owns and operates the Spike Box Ranch in Cherry County, Nebraska. (Id. ¶ 2.) Purdum is a resident of Cherry County, Nebraska, and a manager at Spike Box Ranch. (Id. ¶ 3.)

On May 13, 2010, Samland used an ATV to herd bison on the Spike Box Ranch. (Id. ¶¶ 3-4.) As Samland attempted to avoid a charging bison cow, his ATV rolled, landed on his chest, and knocked him unconscious. (See id. ¶¶ 6-8.) He was taken to the hospital and treated for a bruised rib and a swollen knee, but he returned to work on the following day, and he did not miss any additional work due to his injuries. (Id. ¶¶ 9, 11.) Samland did have "continuing pain" and work restrictions following his accident, however, and he made a worker's compensation claim. (Id. ¶¶ 10, 17.)

Despite his injuries, work restrictions, and "prescription pain killers," Samland "was required to continue herding bison while riding an ATV." (Id. ¶¶ 16-17.) Purdum and other Turner Enterprises employees directed insults toward Samland, but otherwise refused to communicate with him. (Id. ¶ 12.)

On June 21, 2010, Samland "hit an unmarked washout and was thrown from his ATV." (Id. ¶ 19.) As a result of this accident, Samland "was hospitalized for a broken collar bone, . . . which required [him] to get a metal plate, six screws and three lag bolts inserted into his shoulder." (Id. ¶ 20.) It appears that he also made a claim for worker's compensation benefits. (See id. ¶ 25.) "Four days later, on June 25, 2010, [the defendants] directed [Samland] to sign a 'Separation Agreement and Release' and gave [him] three days to sign it." (Id. ¶ 21.) Samland refused to sign the separation agreement, and he was fired. (Id. ¶ 22.)

Samland alleges that there is a causal link between his termination and both of his claims for worker's compensation benefits, and therefore his termination was wrongful and "in violation of Nebraska public policy." (Id. ¶ 27. See also id. ¶¶ 25-26.)

Although the complaint indicates on its face that complete diversity is lacking, the defendants removed the action to this court pursuant to 28 U.S.C. §§ 1332 and 1441. (See Notice of Removal ¶ 6, ECF No. 1.) The defendants allege that removal is appropriate because "there is complete diversity of citizenship among the proper parties[,] and the amount in controversy exceeds $75,000, exclusive of interest and costs." (Id. (emphasis added).) They add,

> Plaintiff's joinder of Terry Purdum . . ., a citizen of Nebraska, is fraudulent because Plaintiff has no colorable claim against Purdum. The right of an out-of-state defendant to remove a diversity suit to federal court "cannot be defeated by a fraudulent joinder of a resident defendant." Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921). . . .
>
> . . . Plaintiff cannot establish the claim he has brought against Purdum. In his one-count Complaint, Plaintiff alleges that [Turner Enterprises] and Purdum retaliated against him for filing worker's compensation claims. (Plaintiff's Complaint, ¶¶ 24-27.) No Nebraska case has recognized an extension of a workers' compensation retaliation claim against individual supervisors. To do so would run contrary to Nebraska's definition of "employer" in its workers' compensation statute. . . .

(Id. ¶¶ 8-9 (emphasis in original).)

The defendants' notice of removal is accompanied by a motion to dismiss Samland's claim against Purdum. (See Defs.' Mot. to Dismiss, ECF No. 6.) In support of their motion, the defendants argue that the complaint fails to state a claim upon which relief may be granted against Purdum "[b]ecause Nebraska does not recognize a workers' compensation retaliation claim brought against a co-worker or supervisor." (Id. at 1. See also Defs.' Br. at 1, 3-5, ECF No. 7.) The defendants add that "[w]hile Nebraska courts have not squarely addressed the issue of whether a workers' compensation retaliation claim may be brought against an individual, sister courts have [not allowed such claims]." (Id. at 3 (citations omitted).) Essentially, the defendants' motion to dismiss

re-casts their "fraudulent joinder" claim in a Rule 12(b)(6) framework. (Compare Notice of Removal ¶¶ 6-9, ECF No. 1, with Defs.' Br. at 2-5, ECF No. 7.)[1]

On April 26, 2012, Samland filed a motion to remand the case to the District Court of Cherry County, Nebraska, (ECF No. 9), and a motion to stay consideration of the defendants' motion to dismiss until after Samland's motion to remand has been resolved, (ECF No. 12). In support of his motion to remand, Samland argues that the defendants lacked a reasonable basis for removal because Purdum was not fraudulently joined. (See Pl.'s Br. at 2, ECF No. 11.) Samland notes that "joinder is fraudulent when there exists no reasonable basis in fact and law supporting a claim against the resident defendants," and conversely, there is no fraudulent joinder "if there is a 'colorable cause of action–that is, if the state law might impose liability on the resident defendant under the facts alleged." (Id. (quoting Filla v. Norfolk Southern Ry. Co., 336 F.3d 806, 810 (8th Cir. 2003) (emphasis omitted)).) According to Samland, the defendants cannot satisfy this standard because "Nebraska [appellate courts have] not ruled squarely on the issue of whether an individual supervisor can be found liable for wrongful termination, and it is clear that there is not a consensus among other jurisdictions." (Id. at 5.) He adds that the defendants' reliance upon the definitions appearing in the workers' compensation statute is misplaced because "[t]he public policy exception to the at-will employment doctrine . . . is a product of common law." (Id. at 3.) In addition, he argues that attorney's fees should be awarded against the defendants because they "lacked an objectively reasonable basis for seeking removal." (Id. at 6 (quoting Martin v. Franklin Corp., 546 U.S. 132, 141 (2005)).)

In his motion to stay, Samland argues that his motion to remand and the defendants' motion to dismiss "raise similar questions of Nebraska state law, [but] under different standards of analysis." (Pl.'s Mot. to Stay at 1, ECF No. 12.) More specifically, he states,

> Defendants' justifications for removal and for their Motion to Dismiss are both based on their belief that Defendant Purdum was fraudulently joined to the action, which would make jurisdiction proper. However, Defendants' burden for proving fraudulent joinder under the applicable standard or review for removal and remand differs from their burden under Fed. R. Civ. P. 12(b)(6). Therefore, Plaintiff

---

[1] I do not mean to imply that it was not appropriate for the defendants to seek Purdum's dismissal; I note only that the removal and the motion to dismiss involve the same issue.

> believes that this Court's analysis of whether it should dismiss Defendant Purdum from the action, and Plaintiff's obligation to respond to Defendant's motion, should be postponed until the Court has determined whether Defendants have met their burden for establishing subject matter jurisdiction.

(Pl.'s Br. at 1-2, ECF No. 13.) He adds that the defendants' motion to dismiss would be rendered moot if Samland's motion to remand were granted. (Pl.'s Mot. to Stay at 1, ECF No. 12.)

As noted above, on June 18, 2012, the magistrate judge recommended that Samland's motion to remand and motion to stay be granted and that the defendants' motion to dismiss be denied as moot. (See generally Findings, Recommendation, and Order, ECF No. 22.) The magistrate judge found initially that the question of subject matter jurisdiction must be resolved before the defendants' motion to dismiss may be considered. (See id. at 5-6.) She then proceeded to analyze the issue of "'whether there is arguably a reasonable basis for predicting that the state's law might impose liability' against Purdum." (Id. at 6 (quoting Filla, 336 F.3d at 811).) The magistrate judge noted that "[t]he parties have not cited, and the court has not found, any Nebraska state court decision stating a terminated employee cannot recover against a supervisor when the impetus for the termination violates public policy." (Id. at 7.) She also noted that although the United States District Court for the District of Nebraska has found, on two separate occasions, that supervisors cannot be held liable on such claims, those decisions are not controlling. (Id. at 7-8 (citing Buzek v. Pawnee County, Nebraska, 207 F. Supp. 2d 961, 970 n.14 (D. Neb. 2002); Riggs v. County of Banner, 159 F. Supp. 2d 1158, 1171 (D. Neb. 2001)).) More specifically, the magistrate judge explained,

> [F]ederal court decisions interpreting Nebraska law are not binding on the Nebraska Supreme Court. Rather, they represent a reasoned prediction of what a Nebraska court would decide if faced with the same question of first impression. A state court may also conclude that federal interpretations of state law are not even instructive. This is particularly true when, as here, the precise state claim currently at issue (e.g., a workers' compensation retaliation claim) was not addressed in the cited and/or past federal decisions, the legal issues before the federal court require an interpretation of state public policy as reflected in or supported by state statutes, the federal decisions are a decade old, and the claims raised by the plaintiff are based on still-evolving areas of state law.

(Id. at 7-8 (footnote omitted).) In addition, the magistrate judge found that "[t]he plaintiff's claim against Purdum is not wholly novel," and "some courts have held that claims alleging termination of employment in violation of public policy can be pursued against not only the plaintiff's employer,

but also any supervisory personnel who perpetrated the wrongful conduct." (Id. at 9 (citing Myers v. Alutiiq International Solutions, LLC, 811 F. Supp. 2d 261, 268-69 (D.D.C. 2011); Jasper v. H. Nizam, Inc., 764 N.W.2d 751, 776 (Iowa 2009); Harless v. First Nat. Bank in Fairmont, 289 S.E.2d 692, 700 (W. Va. 1982)).) Based on the foregoing points, the magistrate judge concluded that "there is a reasonable basis for predicting that the state law might impose liability on defendant Purdum," that Samland "did not fraudulently join Purdum as a defendant," that "diversity jurisdiction does not exist," and that "[t]his case should be remanded to the state court." (Id. at 10 (citation omitted).)

The magistrate judge then observed that the order of remand "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." (Findings, Recommendation, and Order at 11, ECF No. 22 (quoting 28 U.S.C. § 1447(c)).) She concluded that no attorney's fee should be awarded in this case, however, because the defendants had an objectively reasonable basis for seeking removal. (See id. at 11-12 (citing Martin v. Franklin Capital Corp., 546 U.S. 132, 138, 141 (2005)).)

Finally, the magistrate judge determined that because the case should be remanded, the defendants' motion to dismiss should be denied as moot. (Id. at 12.) For the same reason, she entered an order denying as moot Samland's motion to transfer the case to North Platte. (See id.)

On July 2, 2012, the defendants filed objections to the magistrate judge's Findings, Recommendation, and Order. (ECF No. 23.) Specifically, the defendants ask that I "decline [to follow] the [magistrate judge's] recommendation, determine that Defendant Purdum was fraudulently joined, dismiss Purdum from this lawsuit, and retain jurisdiction over the present case." (Id. at 1.)

## II. ANALYSIS

I begin by determining whether this court has subject matter jurisdiction. "Subject matter jurisdiction asserted under 28 U.S.C. § 1332 may be maintained only where there is complete diversity, that is 'where no defendant holds citizenship in the same state where any plaintiff holds citizenship.'" Junk v. Terminix International Co., 628 F.3d 439, 445 (8th Cir. 2010) (quoting In re Prempro Products Liability Litigation, 591 F.3d 613, 620 (8th Cir. 2010)). "In an exception to this rule, a district court may retain jurisdiction where the nondiverse defendant has been fraudulently joined." Id. (citing In re Prempro, 591 F.3d at 620).

"Where applicable state precedent precludes the existence of a cause of action against a defendant, joinder is fraudulent." Filla v. Norfolk Southern Railway Co., 336 F.3d 806, 810 (8th Cir. 2003) (emphasis added). "It is well established that if it is clear under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained." Id. (quoting Iowa Public Service Co. v. Medicine Bo Coal Co., 556 F.2d 400, 406 (8th Cir. 1977)). "However, if there is a 'colorable' cause of action–that is, if the state law might impose liability on the resident defendant under the facts alleged–then there is no fraudulent joinder." Id. (footnote and citation omitted). In short, "'joinder is fraudulent when there exists no reasonable basis in fact and law supporting a claim against the resident defendants,'" and "[c]onversely, if there is a reasonable basis in fact and law supporting the claim, the joinder is not fraudulent." Id. (quoting Wiles v. Capitol Indemnity Corp., 280 F.3d 868, 871 (8th Cir. 2002)).

The defendants suggest that I should not apply the fraudulent joinder standard outlined in Filla; rather, I should apply the standard used to resolve motions brought pursuant to Federal Rule of Civil Procedure 12(b)(6). (See, e.g., Defs.' Objections at 6, ECF No. 23; Defs. Br. in Opp'n to Pl.'s Mot. to Remand at 5, ECF No. 16.) "This question is significant because the two standards differ, with Rule 12(b)(6) being more demanding [on the plaintiff]." Junk v. Terminix International Co., 628 F.3d 439, 445 (8th Cir. 2010). "Under the Filla standard, 'the district court's task is limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved." Id. (quoting Filla, 336 F.3d at 811). "In contrast, 'to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (internal quotation marks and brackets omitted).

In support of their argument that the Rule 12(b)(6) standard should apply, the defendants cite Simpson v. Thomure, 484 F.3d 1081 (8th Cir. 2007), wherein the Eighth Circuit declined to apply the Filla standard in favor of the Rule 12(b)(6) standard because "a nondiverse defendant opposed remand to state court [on the ground that] he was immune from suit under a state workers compensation claim." Junk, 628 F.3d at 445. (See also Defs.' Objections at 6, ECF No. 23.) There is no indication that Purdum is immune from suit in Nebraska, and therefore Simpson is plainly

distinguishable from the instant case. See Junk, 628 F.3d at 445-46. The Filla standard will be used to resolve the fraudulent joinder question first; then, if this court has jurisdiction over the action, the Rule 12(b)(6) standard will be used to analyze the defendants' motion to dismiss. See Junk, 628 F.3d at 445-46.

The defendants have conceded that "Nebraska state courts have not addressed the issue of whether a wrongful discharge claim in violation of public policy may be brought against an individual." (Defs.' Objections at 2, ECF No. 23.) Therefore, it cannot be said that "applicable state precedent precludes the existence of a cause of action" against Purdum. Filla, 336 F.3d at 810 (emphasis added). To avoid remand, then, the defendants must establish that there is no colorable cause of action against Purdum. "[I]f the state law might impose liability on [Purdum] under the facts alleged . . . then there is no fraudulent joinder," and the case must be remanded. Id. Importantly, "all doubts about federal jurisdiction must be resolved in favor of remand." Central Iowa Power Cooperative v. Midwest Independent Transmission System Operator, Inc., 561 F.3d 904, 912 (8th Cir. 2009) (citation omitted).

The defendants have failed to meet their burden. As noted above, Nebraska state courts have not addressed whether an individual may be held liable for a wrongful discharge in violation of public policy, and states that have addressed the issue are of two minds.[2] States that recognize

[2] Compare, e.g., Myers v. Alutiiq International Solutions, LLC, 811 F. Supp. 2d 261, 268-70 (D.D.C. 2011) (concluding that allegations that the individual defendants "were the driving force behind plaintiff's termination, and that their action was in retaliation for plaintiff's cooperation with the OIG investigation," were sufficient to state a claim against them for wrongful termination); Jasper v. H. Nizam, Inc., 764 N.W.2d 751, 775-77 (Iowa 2009) (explaining that a person may be held individually liable for wrongful discharge when that person is an officer of the corporation and "authorized or directed the discharge of the employee for reasons that contravene public policy"); Ballinger v. Delaware River Port Authority, 800 A.2d 97, 110-11 (N.J. 2002) (holding that individual defendants can be held liable for wrongful discharge because "under the common law of New Jersey an Pennsylvania 'an employee is not relieved of liability simply because he or she acted on behalf of the employer'"); and Harless v. First Nat. Bank in Fairmont, 289 S.E.2d 692, 698-99 (W. Va. 1982) (explaining that plaintiff's supervisor could be held liable for retaliatory discharge based on his supervisory position "coupled with . . . evidence that directly linked him as an adversary in the central controversy in which the plaintiff was involved"); with Al-Dahir v. Hamlin, No. 10-CV-2571-CM, 2011 WL 2580110, at *2 (D. Kan. June 28, 2011) ("From the information provided, it appears that defendant Hamlin is merely a manager and cannot be individually liable for a claim of retaliatory

individual liability "reason that individuals are liable for their own torts, even as agents acting on behalf of their employers." Myers v. Alutiiq International Solutions, LLC, 811 F. Supp. 2d 261, 268 (D.D.C. 2011) (citations omitted). "According to that logic, employees can be liable for a wrongful discharge claim just as any other tort." Id. (citations omitted). "These courts 'reason that individual liability promotes deterrence and better decision making because it allows the active wrongdoer to be held directly responsible." Id. (quoting Physio GP, Inc., 306 S.W.3d at 888). "On the other hand, states that do not allow wrongful termination claims against individual supervisors explain that 'the employment relationship is the source of the duty in wrongful discharge torts.'" Id. (quoting Physio GP, Inc., 306 S.W.3d at 888). "That relationship exists only between employer and employee and not between two employees, and only the employer has the power to terminate an employee." Id. (citation omitted). "These courts further reason that individual liability is unnecessary to deter employees 'because liable employers will likely take their own measures to deter agents or employees from wrongfully exercising termination authority.'" Id. (quoting Physio GP, Inc., 306 S.W.2d at 889). "Indeed, fear of liability could discourage supervisors from terminating employers under legitimate circumstances." Id. (citation omitted). "Finally, these courts express the concern that it can be difficult to determine which individuals should be liable for a decision to terminate." Id. (citation omitted). The defendants have not given me any reason to conclude that the Nebraska state courts are likely to favor one of these views over the other, and for present purposes it is irrelevant whether I might favor one rule over another. The question before me is whether the State of Nebraska might impose liability upon Purdum for Samland's alleged wrongful discharge, and in answering this question I must resolve all doubts about the existence of jurisdiction in favor of remand. After careful consideration, I find that Nebraska might impose liability on Purdum based upon the facts alleged in the complaint. Because there is a reasonable basis in fact and law

---

discharge under Kansas law."); Distefano v. Kinder Morgan, Inc., No. 3:10-cv-1028-JPG-SCW, 2011 WL 245583, at *1 (S.D. Ill. Jan. 26, 2011) ("The law is clear that an individual who was not the employer cannot be liable in a retaliatory discharge claim for pursuing worker's compensation benefits." (citing Buckner v. Atlantic Plant Maintenance, Inc., 694 N.E.2d 565, 570 (Ill. 1998))); Physio GP, Inc. v. Naifeh, 306 S.W.3d 886, 887-89 (Tex. Ct. App. 2010) (citing cases).

supporting a claim against him, Purdum was not fraudulently joined in this action. The case must be remanded to the District Court of Cherry County, Nebraska, pursuant to 28 U.S.C. § 1447(c).

In their statement of objections to the magistrate judge's Findings, Recommendation, and Order, the defendants argue that "there is no reasonable basis for predicting that a Nebraska court might impose liability against an individual for a wrongful discharge in violation of public policy" because the Nebraska Supreme Court allows "an action for retaliatory discharge . . . against an employer when an employee has been discharged for filing a workers' compensation claim." (Defs.' Objections at 2, ECF No. 23 (citing Jackson v. Morris Communications Corp., 265 Neb. 423, 432 (2003); Riesen v. Irwin Indus. Tool Co., 272 Neb. 31, 48-49 (2006) (emphasis in original)).) It is true that Jackson and Riesen each involve allegations that employers wrongfully discharged at-will employees for filing workers' compensation claims, and thereby violated Nebraska public policy. It is also true that in Riesen, the Nebraska Supreme Court stated that "[t]o establish a prima facie case of unlawful retaliation, an employee must show that he or she participated in a protected activity, that the employer took an adverse employment action against him or her, and that a causal connection existed between the protected activity and the adverse employment action." 272 Neb. at 48-49 (emphasis added). Neither Jackson nor Reisen indicates, however, that an individual may not also be held liable for a wrongful discharge in violation of public policy. The defendants have conceded that "Nebraska state courts have not addressed the issue whether a wrongful discharge claim in violation of public policy may be brought against an individual," (Defs.' Objections at 2, ECF No. 23; see also Defs.' Br. at 3, ECF No. 7), and to the extent that they now claim that Jackson and Riesen hold otherwise, their argument is not well-taken.

Next, the defendants reemphasize that the United States District Court for the District of Nebraska held in Riggs v. County of Banner, 159 F. Supp. 2d 1158 (D. Neb. 2001) and in Buzek v. Pawnee County, Nebraska, 207 F. Supp. 2d 961 (D. Neb. 2002), that claims of wrongful discharge in violation of public policy cannot be brought against individuals in Nebraska. (Defs.' Objections at 2-3, ECF No. 23.) The defendants argue that the magistrate judge erred by rejecting these cases' "reasoned predictions" about the viability of such claims in Nebraska. (Id. at 4.) They add that "it is 'unreasonable' to believe that Nebraska would allow the wrongful discharge claim against Purdum, particularly because this Court expressly prohibits this claim and no Nebraska state court

allows this claim." (Id. at 7 (emphasis in original).) A brief review of both Riggs and Buzek is in order.

In Riggs, a group of then-current and former employees of Banner County, Nebraska, sued their former supervisor, the county, and three county commissioners, alleging that a female county employee received preferential treatment while the plaintiffs were subjected to a hostile work environment. One of the plaintiffs (Riggs) also alleged that he was wrongfully discharged by the county commissioners for being "prepared to report to authorities that the county commissioners had received supplies and services from the road and weed department without payment." 159 F. Supp. 2d at 1163. The court found that there were "genuine issues of material fact concerning Riggs' claim that he was discharged because [he] voiced opposition to, and was preparing to report to authorities, the alleged theft activities," and therefore it declined to grant the county's summary judgment motion on this point. Id. at 1172. The court also found, however, that Riggs' claim failed insofar as it was directed against any of the individual defendants. On this point, the court stated,

> Riggs' wrongful discharge action is within the scope of Nebraska's public policy exception as described by the Eighth Circuit . . . and as applied by the Nebraska Court of Appeals . . . . Such an action, though, will only lie against the County. See, e.g., Arthur v. Armco, Inc., 122 F. Supp. 2d 876, 880 (S.D. Ohio 2000) (dismissing claims against plaintiff's supervisors because "the [Ohio] caselaw recognizing common law claims for wrongful discharge in violation of public policy speaks solely in terms of the liability of an 'employer.'").

Id. at 1171 (citations omitted) (alteration in original).

Although the court carefully reviewed Nebraska law when determining whether Riggs' wrongful discharge action against the county was within the scope of Nebraska's public policy exception to the at-will employment doctrine, see 159 F. Supp. 2d at 1170-71, its determination that supervisors cannot be held individually liable was based not on a review of Nebraska law, but on Ohio law.

In Buzek, the plaintiff sued individual members of the Pawnee County Board of Commissioners, alleging that the defendants refused to promote him and eventually terminated him from his position as a deputy sheriff because he "supported the former sheriff during a recall campaign by the county board," criticized the appointment of the new sheriff, investigated and reported an automobile accident involving a county commissioner, and made a statement about a

county commissioner's wife during a county board meeting. 207 F. Supp. 2d at 963. The defendants moved to dismiss the plaintiff's claim that he was wrongfully discharged in violation of public policy. After reviewing Nebraska law, the court granted the defendants' motion, stating, "Given these various statutory limitations, it simply cannot be concluded that sections 23-1721 to 23-1737 express a clear public policy 'that sheriff department personnel [cannot] be fired due to political action and support of candidates,' as alleged in the complaint. Because Buzek does not point to any other source of the alleged Nebraska policy, the defendants' motion to dismiss the claim will be granted." Id. at 970 (alteration in original) (footnote omitted). In a footnote, the court added,

> Additionally, it is apparent that the individual defendants cannot be sued at common law for wrongful discharge in any event. See Riggs v. County of Banner, 159 F. Supp. 2d 1158, 1171 (D. Neb. 2001) (dismissing "public policy" wrongful discharge claim against individual county commissioners). See, also, Arthur v. Armco, Inc., 122 F. Supp. 2d 876, 880 (S.D. Ohio 2000) (dismissing claims against plaintiff's supervisors because "the [Ohio] caselaw recognizing common law claims for wrongful discharge in violation of public policy speaks solely in terms of the liability of an 'employer.'").

207 F. Supp. 2d at 970 n.4 (alteration in original). Thus, Buzek's statement that individual defendants cannot be held liable for wrongful discharge is dicta, and it is supported only by citations to Riggs and Arthur.

I agree with Samland that Riggs and Buzek represent neither binding nor persuasive authority on the question presented in the instant case (i.e., whether Purdum was joined fraudulently as a defendant). (See Pl.'s Opp'n to Defs. Objections at 4, ECF No. 24.) In the first place, "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." Camreta v. Greene, 131 S. Ct. 2020, 2023 n.7 (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1][d], p. 134-26 (3d ed. 2011)). Also, neither Riggs nor Buzek involved the issue of fraudulent joinder–and as noted previously, the issue of fraudulent joinder is governed by a unique standard of review. See Junk, 628 F.3d at 445. Furthermore, both Riggs and Buzek rely on Ohio law for the proposition that supervisors may not be held liable for wrongful discharges in violation of public policy, but Ohio now recognizes that individuals may indeed be liable in such cases. See Jenkins v. Central Transport, Inc., No. 09V525, 2010 WL 420027, at *4 (N.D. Ohio Jan. 29, 2010) (citing cases and

finding that an individual defendant had not been fraudulently joined because individual liability for wrongful termination in violation of public policy "is at least a possibility" in Ohio). Samland's motion to remand will not be denied on the ground that Riggs and Buzek "expressly prohibit[]" claims against individuals for wrongful discharge in violation of public policy. (Defs.' Objections at 7, ECF No.23 (emphasis omitted).)

The defendants argue next that Brunk v. Graybar Electric Co., Inc., 713 F. Supp. 2d 814 (D. Iowa 2010), "is a good example of why the instant case must not be remanded." (Defs.' Objections at 4, ECF No. 23.) In Brunk, the United States District Court for the Southern District of Iowa rejected the argument that resident defendants had been fraudulently joined in the plaintiff's suit, and it remanded the case to the District Court for Polk County, Iowa. In so doing, the court relied upon Jasper v. H. Nizam, Inc., 764 N.W.2d 751 Iowa 2009), wherein the Iowa Supreme Court concluded that "liability for the tort [of wrongful discharge in violation of public policy] can extend to individual officers of a corporation who authorized or directed the discharge of an employee for reasons that contravene public policy." Brunk, 713 F. Supp. 2d at 820 (quoting Jasper, 764 N.W.2d at 777). According to Turner Enterprises and Purdum, Brunk stands for the proposition that "[b]ecause there was a direct pronouncement by the Iowa Supreme Court that such a claim was viable, there was a 'reasonable basis for predicting that the state law might impose liability based on the facts involved' in that case." (Defs.' Objections at 5, ECF No. 23 (quoting Brunk, 713 F. Supp. 2d at 820) (emphasis in original).) I take the defendants' argument to be that because the Nebraska Supreme Court has not made a "direct pronouncement" that an individual may be liable for wrongful discharge in violation of public policy, Purdum's joinder was fraudulent. But this is not the law. On the contrary, and as explained above, joinder is not fraudulent so long as the plaintiff has a colorable claim, i.e., the state law might impose liability on the resident defendant on the facts alleged. Filla v. Norfolk Southern Railway Co., 336 F.3d 806, 810 (8th Cir. 2003). Samland need not show that Nebraska has made a "direct pronouncement" on the issue in order to secure remand. Moreover, as the parties opposing remand, the defendants must bear the risk of uncertainty in the law. See Central Iowa Power Cooperative v. Midwest Independent Transmission System Operator, Inc., 561 F.3d 904, 912 (8th Cir. 2009) ("[A]ll doubts about federal jurisdiction must be resolved in favor of remand.").

The defendants also argue that the law is not evolving in favor of allowing individual liability for wrongful discharge, and "more recent pronouncements both within and without the Eighth Circuit make clear that there is no reasonable basis for allowing a claim against Purdum to survive." (Defs.' Objections at 5, ECF No. 23 (citing Al-Dahir v. Hamlin, No. 10-CV-2571-CM, 2011 WL 2580110 (D. Kan. June 28, 2011); Distefano v. Kinder Morgan, Inc., No. 3:10-cv-1028-JPG-SCW, 2011 WL 245583 (S.D. Ill. Jan. 26, 2011)).) I agree that some states do hold that individuals cannot be held liable for unlawful discharges in violation of public policy. As I noted previously, however, individual liability is a possibility in some states, and I cannot say that there is no reasonable basis in law supporting a claim against Purdum in the Nebraska courts.

Finally, the defendants argue that Samland's motion to remand must be denied pursuant to Menz v. New Holland North America, Inc., 440 F.3d 1002 (8th Cir. 2006). (See Defs.' Objections at 6, ECF No. 23.) According to the defendants, Menz holds that the joinder of a resident defendant is fraudulent when state law neither recognizes nor prohibits a plaintiff's claim against that defendant. (See Defs.' Objections at 6-7, ECF No. 23 ("The Menz plaintiffs claimed that the nondiverse defendant, a company that repaired the tractor that injured them, had a general duty to warn of the dangerous character of the product. While Missouri law recognized a repairer's duty to warn of dangers of which it becomes aware as a result of the repair work it is asked to perform, the Eighth Circuit could find no Missouri law that recognized a broader duty for a repairer as claimed by the plaintiff and no Missouri law that prohibited the broader claim plaintiffs espoused. Accordingly, the Court concluded it was 'unreasonable to believe Missouri would impose such a duty upon a repair service provider' and upheld the denial of remand. . . . A fortiori, in the instant lawsuit, it is unreasonable to believe that Nebraska would allow the wrongful discharge claim against Purdum . . . .") (citations omitted).) I disagree with the defendants' reading of Menz. In Menz, the Eighth Circuit found that the plaintiff had no colorable claim against a repairer because a repairer has no "duty to warn of general dangers associated with a product unrelated to the specific repair work performed." 440 F.3d at 1005. In support of this finding, the Eighth Circuit noted that not only was there no Missouri law on point, but also "no jurisdiction . . . has expanded a repairer's duty to include the duty to warn of general dangers associated with a product unrelated to the specific repair work performed." Id. Because no court had ever allowed a claim based on such a duty, the

Eighth Circuit concluded that "it is unreasonable to believe Missouri would impose such a duty upon a repair service provider." Id. Here, in contrast, a number of courts have allowed claims analogous to Samland's to proceed against individual defendants, and it is reasonable to conclude that Nebraska might also allow such a claim.

The magistrate judge correctly determined that Samland's motion to remand must be granted and that the defendants' motion to dismiss must be denied as moot. I also agree with the magistrate judge's recommendation that no attorney's fees be awarded pursuant to 28 U.S.C. § 1447(c). Because subject matter jurisdiction is lacking, however, it seems to me that Samland's motion to stay must also be denied as moot.

**IT IS ORDERED** that:

1. the defendants' objections to the magistrate judge's Findings, Recommendation, and Order, ECF No. 23, are overruled;

2. the magistrate judge's Findings, Recommendation, and Order, ECF No. 22, is adopted in part;

3. the plaintiff's motion to remand, ECF No. 9, is granted, and this action is remanded to the District Court of Cherry County, Nebraska;

4. the plaintiff's motion for attorney's fees, ECF No. 9, is denied;

5. because this court lacks subject matter jurisdiction over this action, the defendants' motion to dismiss the plaintiff's claim against Purdum, ECF No. 6, and the plaintiff's motion to stay, ECF No. 12, are denied as moot; and

6. the Clerk of the United States District Court for the District of Nebraska shall mail a certified copy of this order to the Clerk of the District Court of Cherry County, Nebraska, and may take any other action necessary to effectuate the remand of this case.

Dated July 30, 2012.

BY THE COURT

Warren K. Urbom
United States Senior District Judge